UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 19- *327 (NLH)* |
| v. | Hon. _____ |
| CHARLES E. KARTSAKLIS | 18 U.S.C. § 1343 |

## INFORMATION

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

## COUNT 1
### (Wire Fraud)

1.  At all times relevant to this Information:

    a.  Defendant CHARLES E. KARTSAKLIS was the President and Chief Executive Officer of Code Green Solar, LLC ("CGS"), which KARTSAKLIS founded in 2009.

    b.  CGS was incorporated as a limited liability company in the state of New Jersey on November 9, 2009, and installed solar panels for businesses in the state of New Jersey.

    c.  CGS's website stated that "[t]he company ha[d] experienced tremendous growth and prosperity since its inception due to its core values of honesty and a sense of pride in the work we perform." It further stated, "[w]e are committed to living life consistent with our values and making a sustainable future for our community and our families."

1

d. Congress passed the American Recovery and Reinvestment Act

("ARRA," or the "Act") in 2009 "to provide a fiscal stimulus to the nation's ailing economy."[1]

Section 1603 of the Act, codified at 26 U.S.C. § 48, "was designed to encourage the

development of renewable energy systems," and permitted "an eligible party [to] claim a 30

percent cash rebate of the basis of qualifying renewable energy systems, such as solar panel

systems, windmill farms, and biomass energy facilities."[2] Importantly, "[a] 1603 payment is

made after the energy property is placed in service; a 1603 payment is not made prior to or

during construction of the energy property."

e. The U.S. Department of the Treasury began accepting applications for

Section 1603 funding on July 31, 2009.[3] As of the March 1, 2018 final summary of the program,

over 109,000 projects had been funded, and $26.2 billion in funding provided.[4]

### THE SCHEME TO DEFRAUD

2. From in or about 2012 and continuing through on or about November 4, 2016,

in Camden County, in the District of New Jersey, and elsewhere, the defendant,

CHARLES E. KARTSAKLIS,

---

[1] *LCM Energy Sols. v. United States*, 128 Fed. Cl. 728, 729 (Ct. Fed. Cl. 2016).

[2] *Id. See also LCM Energy Sols. v. United States*, 107 Fed. Cl. 770, 771 (2012) ("Section 1603 of the American Recovery and Reinvestment Tax Act of 2009 ('Recovery Act'), 26 U.S.C. § 48 ('Section 1603') directed the United States Treasury Department ('the Treasury') to provide 'Grants for Specified Energy Property In Lieu of Tax Credits.' . . . [I]n essence, it reimbursed persons or entities for a portion of the cost of placing 'specified energy property,' such as solar panels, into service in 2009 or 2010, or later than 2010 in limited circumstances.").

[3] *See* "Overview and Status Update of the §1603 Program," Apr. 1, 2017, *available at* https://www.treasury.gov/initiatives/recovery/Documents/P%20Status%20overview%202018-03-01.pdf (last visited February 5, 2019).

[4] *See id.*

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud the United States, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, which scheme and artifice is set forth below.

3.   In or about 2011 and 2012, defendant CHARLES E. KARTSAKLIS submitted proposals, on behalf of CGS, to several businesses in the state of New Jersey, including Businesses 1 through 5.  However, none of these businesses agreed to the proposals that KARTSAKLIS had submitted.

4.   It was part of the scheme and artifice to defraud that, notwithstanding the businesses' decision not to install solar panels, defendant CHARLES E. KARTSAKLIS submitted applications for Section 1603 funding purportedly as reimbursement for the cost of solar panels that CGS installed for Businesses 1 through 5 on or about September 30, 2012.

5.   It was further part of the scheme and artifice to defraud that defendant CHARLES E. KARTSAKLIS submitted applications for Section 1603 funding that falsely stated that the solar panel installation projects – which in fact did not exist – collectively created what KARTSAKLIS estimated to be dozens of jobs and cost millions of dollars, for which KARTSAKLIS sought reimbursement of 30 percent of the cost of installation for each project. KARTSAKLIS submitted each of the applications under penalty of perjury.

6.   It was further part of the scheme and artifice to defraud that defendant CHARLES E. KARTSAKLIS submitted fraudulent paperwork that he created in support of the applications for Section 1603 funding.  For example, in support of each application KARTSAKLIS created a fake "Solar Power Purchase Agreement" that purported to reflect an agreement between CGS and each of Businesses 1 through 5.  These documents purported to show an agreement for CGS's installation of photovoltaic systems for the businesses, and the

businesses' purchase of the electricity generated from the system from CGS. The agreements reflected the ink signature of KARTSAKLIS, as President of CGS, and the signatures of purported representatives of Businesses 1 through 5, which KARTSAKLIS forged.

7. It was further part of the scheme and artifice to defraud that defendant CHARLES E. KARTSAKLIS also submitted fraudulent emails that purported to be sent to KARTSAKLIS from a utility company. These emails, which bore the logo of the utility company, but which KARTSAKLIS in fact created to support the fraudulent applications for Section 1603 funding, falsely stated that the utility company had installed meters at the addresses of Businesses 1 through 5. In actuality, the utility company had not installed such meters.

8. As a result of the submission of the Section 1603 funding applications, defendant CHARLES E. KARTSAKLIS acquired over $3 million in U.S. Treasury funds, which were wired to CGS's business bank account. A summary of funding to CGS, ostensibly for installing solar panels for Businesses 1 through 5 which actually did not exist, is provided below:

| Business | Application Date | Payment Award Date | Treasury Application Number ("TAN") | Property | Payment Date | Payment Amount |
|---|---|---|---|---|---|---|
| 1 | 9/30/12 | 11/8/12 | TAN 2012E48SE219333 | Business 1 | 11/15/12 | $602,562 |
| 2 | 9/30/12 | 11/8/12 | TAN 2012E48SE219123 | Business 2 | 11/15/12 | $650,442 |
| 3 | 9/30/12 | 11/11/12 | TAN 2012E48SE219512 | Business 3 | 11/19/12 | $550,489 |
| 4 | 9/30/12 | 12/5/12 | TAN 2012E48SE221208 | Business 4 | 12/13/12 | $459,930 |
| 5 | 9/30/12 | 4/12/13 | TAN 2012E48SE2 | Business 5 | 4/19/13 | $818,515 |
| | | | | | | $3,081,938 |

9. As part of the Section 1603 funding program, defendant CHARLES E. KARTSAKLIS regularly submitted annual reports regarding the ongoing production of electricity from the solar panel systems that CGS claimed to have installed. According to the "Terms and Conditions," associated with each of the applications submitted by CGS for the

Section 1603 grant awards for Businesses 1 through 5, if CGS failed to "comply with any term of the award, whether stated in a Federal statute or regulation, program guidance, these Terms and Conditions, or a notice of award, Treasury may take any remedial action that is legally available including disallowing all or a part of the Section 1603 payment."

10. According to the "Terms and Conditions" for each of the Section 1603 grant awards for Businesses 1 through 5, CGS was required to "provide periodic reports as required by Treasury. A project performance report is required on an annual basis for a period of five years after the property was placed in service. Annual performance reports are due no later than 21 days following the end of the reporting period. The first reporting period begins on the date the property is placed in service."

11. In addition, the Annual Performance Report and Certification required the recipient of funds to answer the following question: "Has the energy property, as of the date of this report, stopped producing energy?"

12. Defendant CHARLES E. KARTSAKLIS submitted annual reports on behalf of CGS claiming annual solar performance results for purported solar facilities at each of the above-described businesses. Each of these reports indicated that each of the solar facilities purportedly continued to produce solar energy at the time of the submission of the annual report. Because CGS had not actually installed solar panel systems for Businesses 1 through 5, each of the annual reports contained false and fraudulent information.

| | Payment Award Date | Treasury Application Number ("TAN") | Property | Payment Date | Annual Reports Filed |
|---|---|---|---|---|---|
| 1 | 11/8/12 | TAN 2012E48SE219333 | Business 1 | 11/15/12 | 10/8/13; 9/24/14; 9/9/15; and 11/4/16 |
| 2 | 11/8/12 | TAN 2012E48SE219123 | Business 2 | 11/15/12 | 10/21/13; 10/3/14; 10/7/15; and |

| | Payment Award Date | Treasury Application Number ("TAN") | Property | Payment Date | Annual Reports Filed |
|---|---|---|---|---|---|
| | | | | | 11/4/16 |
| 3 | 11/11/12 | TAN 2012E48SE219512 | Business 3 | 11/19/12 | 9/16/13; 9/16/14; 9/9/15; and 10/13/16 |
| 4 | 12/5/12 | TAN 2012E48SE221208 | Business 4 | 12/13/12 | 12/2/13; 11/10/14; 11/6/15; and 11/4/16 |
| 5 | 4/12/13 | TAN 2012E48SE2 | Business 5 | 4/19/13 | 4/3/14; 3/11/15; 4/20/16; and 3/15/17 |

13. On or about November 4, 2016, for the purpose of executing the aforesaid scheme and artifice, in Camden County, in the District of New Jersey and elsewhere, the defendant,

CHARLES E. KARTSAKLIS,

did knowingly and intentionally cause to be transmitted in interstate and foreign commerce writings, signs, signals, pictures and sounds, namely an electronically filed annual report for Business 1, by means of wire communications in interstate commerce.

In violation of Title 18, United States Code, Section 1343.

CRAIG CARPENITO
United States Attorney

CASE NUMBER:   __19-__

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

## v.

## CHARLES E. KARTSAKLIS

# INFORMATION

18 U.S.C. § 1343

**CRAIG CARPENITO**
U.S. Attorney
Newark, New Jersey

DIANA VONDRA CARRIG
Assistant U.S. Attorney
856-757-5026